UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRK PEMBERTON,<br><br>                         Plaintiff,<br>v.<br><br>JACK IN THE BOX INC.,<br><br>                       Defendant. | Case No.: 24-CV-1179 TWR (JLB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>(ECF No. 23) |

Presently before the Court is Defendant Jack in the Box Inc. ("JITB")'s Motion to Dismiss Plaintiff Kirk Pemberton's First Amended Complaint ("Mot.," ECF No. 23), as well as Pemberton's Response in Opposition to ("Opp'n," ECF No. 25) and JITB's Reply in Support of ("Reply," ECF No. 26) the Motion. The Court held a hearing on August 19, 2025. (*See* ECF No. 30.) Having carefully considered Plaintiff's First Amended Complaint ("FAC," ECF No. 22), those materials properly incorporated by reference, the Parties' arguments, and the relevant law, the Court **GRANTS** JITB's Motion and **DISMISSES** Pemberton's First Amended Complaint **WITH LEAVE TO AMEND**.

/ / /

/ / /

/ / /

# BACKGROUND[1]

Pemberton is the inventor of a menu board system called the "Re-Facing Magnetic System" ("RMS"). (*See* FAC ¶¶ 6, 8, 10.) The components of the RMS are as follows: "(a) mounting boards; (b) acrylic prints; (c) polycarbonate panels; (d) magnets; (e) price carriers; (f) seam covers; and (g) pre-press-print production." (*Id.* ¶ 11.) Pemberton is the listed owner and inventor of U.S. Patent Nos. 7,870,687 (the "'687 Patent"); 8,205,369 (the "'369 Patent"); and 8,464,447 (the "'447 Patent") (collectively, the "Asserted Patents"). (*Id.* ¶¶ 28, 38, 48; ECF No. 1-2 ("Ex. A").) Plaintiff alleges that JITB's RMS systems infringe independent claim 1 of the '687 Patent, independent claim 1 of the '369 Patent, and independent claim 1 of the '447 Patent (collectively, the "Asserted Claims"). (FAC ¶¶ 29, 39, 49.)

The Asserted Patents are related and are all entitled "Signage Apparatus Having Simple Magnet-Based Structure for Ease of Modification," and they share overlapping specifications. U.S. Patent No. 7,870,687, at [54] (filed Jan. 18, 2011); U.S. Patent No. 8,205,369, at [54] (filed Jun. 26, 2012); U.S. Patent No. 8,464,447, at [54] (filed Jun. 18, 2013). The inventions claimed in the Asserted Patents relate "to signs of the type used in fast food restaurants, coffee shops and other retail stores where items offered for sale and their prices frequently change." '687 Patent col. 1 ll. 8–11; *see* '369 Patent col. 1 ll. 15–18; '447 Patent col. 1 ll. 16–17. More specifically, the inventions relate "to a readily modifiable menu board or similar sign which employs a relatively simple magnet-based structure to facilitate easy modifications by non-technical personnel." '687 Patent col. 1 ll. 11–14; *see* '369 Patent col. 1 ll. 18–21; '447 Patent col. 1 ll. 17–21

In the First Amended Complaint, Pemberton asserts only three claims from the Asserted Patents—independent claim 1 of the '687 Patent, independent claim 1 of the '369

---

[1] For purposes of the Motion, the facts alleged in Pemberton's FAC are accepted as true. *See Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

Patent, and independent claim 1 of the '447 Patent.  (*See* FAC ¶¶ 29, 39, 49.)  Those three Asserted Claims are set forth in full below.

    Independent claim 1 of the '687 Patent recites:

    1. A signage apparatus comprising:

    a mounting board having at least one aperture;

    a metal member attached to a rear surface of said mounting board at said aperture;

    a first printed sheet having observable indicia thereon;

    at least one magnet affixed to a back surface of said first printed sheet, said magnet being configured to be received in said at least one aperture in magnetic attraction to said metal member for retaining said first printed sheet against said mounting board;

    wherein said mounting board is translucent.

'687 Patent col. 4 ll. 56–67.

    Independent claim 1 of the '369 Patent recites:

    1. A signage apparatus comprising:

    a mounting board having at least one aperture;

    a metal member attached to a rear surface of said mounting board at said aperture and a magnet attached to said metal member within said aperture;

    a first printed sheet having observable indicia thereon;

    at least one connection device secured to a surface of said first printed sheet, said device being configured to be received in said at least one aperture and having a magnetizable metal for magnetic attraction to said magnet for retaining said first printed sheet against said mounting board;

    wherein said magnet and said at least one aperture are both circular cylindrical in shape and where said circular cylindrical aperture is at least partially beveled.

'369 Patent col. 6 ll. 23–37.

    Independent claim 1 of the '447 Patent recites:

    1. A readily modifiable signage apparatus comprising:

    a wall having a planar surface for receiving a printed sheet thereon;

    a plurality of printed sheets for being releasably affixed to said planar surface, each of said printed sheets and said planar surface having corresponding magnetic attraction devices affixed at selected locations for retaining at least one of said printed sheets on said planar surface in a precisely aligned position and for selective removal of one said printed sheet for replacement by another said printed sheet;

    wherein said magnetic attraction devices comprise a respective metal device affixed to a rear surface of each said printed sheet and a magnet affixed to said planar surface of said wall and accessible for magnetic retention of said magnet to said metal device;

    wherein each said respective metal device is affixed to said rear surface of a printed sheet through a respective sponge-like member interposed between said each metal device and a rear surface of a printed sheet.

'447 Patent col. 6 ll. 32–51.

    On July 9, 2024, Pemberton filed the instant action against JITB, asserting three claims of patent infringement as to each of the Asserted Patents. (*See generally* Compl.) On November 13, 2024, JITB moved to dismiss Pemberton's complaint, (ECF No. 14), and the Court granted JITB's motion with leave to amend on February 26, 2025, (ECF No. 21).

    Pemberton subsequently filed his First Amended Complaint on March 11, 2025. (*See generally* FAC.) The instant Motion seeking to dismiss Pemberton's claims for patent infringement contained in the First Amended Complaint followed on March 26, 2025. (*See generally* ECF No. 23.)

## LEGAL STANDARD

    "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to

state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## ANALYSIS

JITB argues that Pemberton's First Amended Complaint should be dismissed because Pemberton has failed adequately to plead claims for patent infringement. (Mot. at 1–2.) Specifically, JITB contends that images attached to Pemberton's First Amended Complaint conclusively show that the accused JITB system does not satisfy the "affixed to/secured to" limitations contained in the Asserted Claims. (*Id.*)

/ / /

/ / /

## I. Legal Standards

### A. Pleading Patent Infringement

Federal Circuit law applies to the specific question of whether a complaint properly states a claim for patent infringement on which relief may be granted. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024). Generally, to establish infringement of a patent claim, "a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device." *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1378 (Fed. Cir. 2011); *see SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1380 (Fed. Cir. 2021). A patent infringement analysis proceeds in two steps. *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1350 (Fed. Cir. 2022); *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1329 (Fed. Cir. 2005). In the first step, the court construes the asserted claims as a matter of law. *See Niazi*, 30 F.4th at 1351; *JVW*, 424 F.3d at 1329. In the second step, the factfinder compares the properly construed claims to the accused device. *See id.*

The Federal Circuit has explained that, to assert a plausible claim for patent infringement under the *Iqbal/Twombly* standard, the complaint must "place the alleged infringer on notice of what activity is being accused of infringement." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (cleaned up) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). A plausible claim for patent infringement "must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content." *Id.* Thus, a plaintiff cannot simply recite the claim elements and merely conclude that the accused product has those elements. *Id.* at 1353. Rather, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.*; *see, e.g., Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018)

(considering the complexity of the technology and the number of claims at issue in assessing whether the plaintiff had adequately stated a claim for patent infringement).

Nevertheless, the Federal Circuit has explained that the standard for pleading patent infringement is "not onerous." *Bot M8*, 4 F.4th at 1354; *see also Bell Semiconductor, LLC v. NXP USA, Inc.*, 653 F. Supp. 3d 767, 777 (S.D. Cal. 2023) ("[V]ery little is required in order to plead a claim of patent infringement."). A patentee need not prove its case at the pleading stage." *AlexSam*, 119 F.4th at 35 (citing *Bot M8*, 4 F.4th at 1346). "More particularly: '[a] plaintiff is not required to plead infringement on an element-by-element basis. Instead, it is enough that a complaint place the alleged infringer on notice of what activity . . . is being accused of infringement.'" *Id.* (quoting *Bot M8*, 4 F.4th at 1352).

Further, in a recent decision, the Federal Circuit held that a district court may consider claim construction issues in deciding a Rule 12(b)(6) motion to dismiss. *See UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 992–94 (Fed. Cir. 2024) (rejecting *per se* rule against construing claim terms at the Rule 12(b)(6) stage of a case). The Federal Circuit explained: "Where claims are construed based on intrinsic evidence alone, a decision on claim construction is not different in kind from the interpretation of other legal standards, which is proper and routine in ruling on a motion under Rule 12(b)(6)." *Id.* at 993; *see also id.* at 994 ("Some case-specific circumstances can make it improper for a district court to resolve a claim construction dispute in the context of adjudicating a Rule 12(b)(6) motion, but sometimes a claim's meaning may be so clear on the only point that is ultimately material to deciding the dismissal motion that no additional process is needed."); *ALD Soc., LLC v. Verkada, Inc.*, 654 F. Supp. 3d 972, 979 (N.D. Cal. 2023) ("[T]he Court may dismiss a complaint prior to claim construction when the complaint rests on an implausible claim construction.") (citing *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018)). In light of this, the Court also sets forth the relevant standards governing claim construction.

/ / /

/ / /

B. **Claim Construction**

Claim construction "is exclusively within the province of the court [to decide]," not the jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996); *see Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326 (2015) (holding claim construction is an issue of law for the court to decide). Although claim construction is ultimately a question of law, "subsidiary factfinding is sometimes necessary." *Teva*, 574 U.S. at 326.

"It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citations omitted). "The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting *Markman*, 52 F.3d at 976); *accord Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1369 (Fed. Cir. 2022).

Claim terms "'are generally given their ordinary and customary meaning[,]'" which "is the meaning that the term would have to a person of ordinary skill in the art [("POSITA")] in question at the time of the invention." *Phillips*, 415 F.3d at 1312–13. "In some cases, the ordinary meaning of claim language as understood by a [POSITA] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent." *O2 Micro*, 521 F.3d at 1360. If the meaning of the term is not readily apparent, the court must look to "'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence.'" *Id.* (quoting *Innova*, 381 F.3d at 1116); *see Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217–18 (Fed. Cir. 2014).

1  In determining the proper construction of a claim, a court should first look to the language of the claims. *See Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370, 1373 (Fed. Cir. 2019) ("'[C]laim construction must begin with the words of the claims themselves.'"); *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1299 (Fed. Cir. 2014) ("'[A] claim construction analysis must begin and remain centered on the claim language itself.'"). The context in which a disputed term is used in the asserted claims may provide substantial guidance as to the meaning of the term. *See Phillips*, 415 F.3d at 1314.

A court must also read claims "in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979; *see* 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."). "'Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term.'" *Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1382 (Fed. Cir. 2014) (quoting *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1272 (Fed. Cir. 2011)).

But "[t]he written description part of the specification does not delimit the right to exclude. That is the function and purpose of claims." *Markman*, 52 F.3d at 980. Therefore, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1327 (Fed. Cir. 2012); *accord Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 514 (Fed. Cir. 2015).

In addition to the claim language and the specification, the patent's prosecution history may be considered if it is in evidence. *Phillips*, 415 F.3d at 1317. The prosecution history "consists of the complete record of the proceedings before the [Patent and Trademark Office ("PTO")] and includes the prior art cited during the examination of the patent." *Id.* "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Id.* "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final

product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* In addition, a court should also consult the prosecution history "so that the court can exclude any interpretation that was disclaimed during prosecution." *Sorensen v. Int'l Trade Comm'n*, 427 F.3d 1375, 1378 (Fed. Cir. 2005) (citing *Phillips*, 415 F.3d at 1317).

In most situations, analysis of the intrinsic evidence will resolve claim construction disputes. *See Vitronics*, 90 F.3d at 1583; *Teva*, 574 U.S. at 331; *see also Seabed Geosols. (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("If the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence."). However, "[w]here the intrinsic record is ambiguous, and when necessary," district courts may "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting *Phillips*, 415 F.3d at 1317). A court must evaluate all extrinsic evidence in light of the intrinsic evidence. *Phillips*, 415 F.3d at 1319. "'[E]xtrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims.'" *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1373 (Fed. Cir. 2022); *see also Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'"). In cases where subsidiary facts contained in the extrinsic evidence "are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence." *Teva*, 574 U.S. at 332.

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro*, 521 F.3d at 1362; *see also Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016) ("'[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.'"). In certain situations, it is appropriate for a court to determine

that a claim term needs no construction and its plain and ordinary meaning applies. *O2 Micro*, 521 F.3d at 1360; *Phillips*, 415 F.3d at 1314. But "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro*, 521 F.3d at 1361. If the parties dispute the scope of a certain claim term, it is the court's duty to resolve the dispute. *Id.* at 1362; *Eon*, 815 F.3d at 1319.

## II. Analysis

In the First Amended Complaint, Pemberton specially alleges infringement of three Asserted Claims—independent claim 1 of the '447 Patent, independent claim 1 of the '369 Patent, and independent claim 1 of the '687 Patent. (*See* FAC ¶¶ 29, 39, 49.) Currently, Pemberton does not assert any of the other claims from the Asserted Patents against JITB. (*See id.*)

Independent claim 1 of the '687 Patent and independent claim 1 of the '447 Patent each include the requirement that the claimed apparatus has a magnet/magnetic device that is "affixed to" the rear/back surface of the printed sheet. *See* '687 Patent col. 4 ll. 62–63 ("at least one magnet affixed to a back surface of said first printed sheet"); '447 Patent col. 6 ll. 43–46 ("said magnetic attraction devices comprise a respective metal device affixed to a rear surface of each said printed sheet and a magnet affixed to said planar surface of said wall"). Similarly, independent claim 1 of the '369 Patent includes the requirement that the claimed apparatus has "at least one connection device secured to a surface of said first printed sheet, said device . . . having a magnetizable metal for magnetic attraction." '369 Patent col. 6 ll. 29–32. JITB contends that Pemberton's First Amended Complaint should be dismissed because the images attached to the First Amended Complaint indisputably show that the accused JITB system does not satisfy these "affixed to/secured to" limitations contained in the Asserted Claims. (*See* Mot. at 1–2, 10–21.)

In deciding a Rule 12(b)(6) motion to dismiss, a court may consider documents attached to the complaint. *See nTerpin v. AT & T Mobility LLC*, 118 F.4th 1102, 1111 n.2

1  (9th Cir. 2024); *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Furthermore, a court need not "accept as true allegations that contradict exhibits attached to the Complaint." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

To support its infringement allegations, Pemberton has attached to his First Amended Complaint an exhibit containing slides with certain images of the accused JITB system. One of these images is displayed below.



(*See* ECF No. 22-1 ("FAC Ex. A") at 8.)

It is clear from the above image that the accused JITB system does not infringe independent claim 1 of the '687 Patent or independent claim 1 of the '447 Patent. Both of those claims require that the accused apparatus have a magnet/magnetic device that is "affixed to" the rear/back surface of the printed sheet. *See* '687 Patent col. 4 ll. 62–63; '447 Patent col. 6 ll. 43–46. The word "affixed" in this context is a common term with a well understood meaning. *See Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary

meaning of claim language as understood by a [POSITA] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."). The word "affix" means "to fasten or stick one thing to another." CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/ dictionary/english/affixed (defining "affix" as "to fasten or stick one thing to another"); *see also* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/affix (defining "affix" as "to attach physically"; Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/attach (defining "attach" as "to make fast (as by tying or gluing)").

And a review of the specifications of the '687 Patent and the '447 Patent shows that those specifications' use of the word "affix" is consistent with that common definition. The specifications state: "The magnets are attached directly to the rear of printed sheets . . . ." '687 Patent col. 2 ll. 54–55; *accord* '447 Patent col. 2 ll. 61; *see also* '687 Patent col. 3 ll. 9–10 ("the sheet and its adhered magnets"). The specifications further state: "Each such magnet is adhesively affixed to a sponge-like material 29 which is, in turn, glued to the back of the printed sheet 22 at precisely select locations." '687 Patent col. 4 ll. 10–12; *accord* '447 Patent col. 4 ll. 48–50. Thus, the specifications of the '687 Patent and the '447 Patent support the notion that the magnets must be directly attached to the printed sheets.

Pemberton contends that the '687 Patent and the '447 Patent do not require that the magnet be directly attached to the printed sheet. (*See* Opp'n at 9.) To support this argument, Pemberton notes that claim 1 of the '447 Patent contains the following language: "wherein each said respective metal device is affixed to said rear surface of a printed sheet through a respective sponge-like member interposed between said each metal device and a rear surface of a printed sheet." '447 Patent col. 6 ll. 48–51. Pemberton contends that this claim language demonstrates that the claimed magnets need not be directly attached to the printed sheet; rather, the magnets can be indirectly attached to the printed sheet. (*See* Opp'n at 9.) Pemberton is only partially correct. The identified claim language shows that

although the magnet need not be directly attached to the printed sheet, the magnet is still directly attached to an intermediary component (*e.g.*, the sponge-like member), which is then directly attached to the printed sheet. *See* '447 Patent col. 6 ll. 48–51. This is consistent with the specification of the '447 Patent, which explains: "Each such magnet is adhesively affixed to a sponge-like material 29 which is, in turn, glued to the back of the printed sheet 22 at precisely select locations." *Id.* at col. 4 ll. 48–50. As such, although the '687 Patent and the '447 Patent allow for direct attachment of the magnet to the printed sheet via an intermediary component/device, they still require that the magnet be directly attached to that intermediary component/device, which is then directly attached to the printed sheet.

At the hearing, Pemberton also argued that figures 5B and 5C of the Asserted Patents' specifications support its contention that the magnets need not be directly attached to the printed sheets. Figures 5B and 5C depict "a view of an edge member used in the preferred embodiment." '447 Patent col. 3 ll. 66–67. Pemberton contends that figures 5B and 5C support its position because those figures depict magnets that are attached to the edge member and not to the printed sheets. Again, Pemberton is only partially correct. Figures 5B and 5C depict a preferred embodiment of the invention where the edge member has magnets attached to it for connecting the edge member to the mounting board. *See* '447 Patent col. 4 ll. 58–60 ("As shown in FIGS. 5A, 5B and 5C, each edge member 27 is connected using a plurality of the magnets 28 in mounting board apertures 32."). However, in describing this preferred embodiment, the specification also states that for this embodiment:

> [E]ach printed sheet 22 is attached to the mounting board at a pair of apertures 26 using a corresponding pair of flat cylindrical magnets 28. Each such magnet is adhesively affixed to a sponge-like material 29 which is, in turn, glued to the back of the printed sheet 22 at precisely selected locations.

*Id.* at col. 4 ll. 45–50. Thus, the embodiment at issue does have magnets attached to the edge member, but it also has magnets that are attached directly to an intermediary component (the sponge-like material), which is then directly attached to the printed sheet.

As such, the preferred embodiment identified by Pemberton is consistent with the requirement that the printed sheet have magnets/magnetic devices that are either directly attached to the printed sheet or directly attached to an intermediary component, which is then directly attached to the printed sheet.

With this understanding of the meaning of the claim term "affixed to," the above image from the exhibit attached to Pemberton's First Amended Complaint depicting the JITB Accused Product shows that there is no infringement of claim 1 of the '687 Patent or claim 1 of the '447 Patent. The image shows that there is nothing directly attached, fastened, or stuck to the rear surface of the identified printed sheet. (*See* FAC Ex. A at 8.) Indeed, at the hearing, Plaintiff conceded that the screenshots show that there is no magnetic device affixed to the printed sheet. Rather, as explained by JITB, the images show that the magnets are on the seam covers, not the printed sheet, and the printed sheet merely has holes for which the magnetic devices can pass through. (*See* Reply at 2.) Therefore, the accused system does not satisfy the "affixed to" limitations contained in claim 1 of the '687 Patent and claim 1 of the '447 Patent.

Turning to independent claim 1 of the '369 Patent, that claim includes the requirement that the accused apparatus have "at least one connection device secured to a surface of said first printed sheet, said device . . . having a magnetizable metal for magnetic attraction." '369 Patent col. 6 ll. 29–32. The word "secured" in this context is a common term with a well understood meaning. *See Phillips*, 415 F.3d at 1314. The word "secure" means "to fasten one object firmly to another." CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/secure; *see* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/secure (defining "secure" as "to make fast"); *see also* CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/fasten (defining "fasten" as "to (cause something to) become firmly fixed together, or in position, or closed).

And a review of the specification of the '369 Patent shows that the specification uses the word "secure" consistent with that common definition. The specification states: "In

one embodiment the magnets are attached directly to the rear of the printed sheets . . . ." '369 Patent col. 2 ll. 61–63; *see also id.* at col. 4 ll. 61–63 ("Each such magnet is adhesively affixed to a sponge-like material 29 which is, in turn, glued to the back of the printed sheet 22 at precisely select locations."), col. 3 ll. 17–18 ("the sheet and its adhered magnets"). The specification also states: "Each printed sheet in this embodiment has a plurality of snap-caps, preferably one snap-cap at each corner of the sheet." *Id.* at col. 3 ll. 39–31; *see also id.* at col. 5 ll. 39–40 ("At respective corners of the graphics sheet 56 are mounted snap-cap connections 58."), figs. 10, 12. As such, similar to the claim term "affixed to" contained in the other Asserted Patents, the claim term "secured to" contained in the '369 Patent requires that the connection device having magnetizable metal be either directly attached to the printed sheet or be directly attached to an intermediary component, which is then directly attached to a surface of the printed sheet.

With this understanding of the meaning of the claim term "secured to," the above image from the exhibit attached to Pemberton's First Amended Complaint depicting the JITB Accused Product shows that there is no infringement of claim 1 of the '369 Patent. The above image shows that there is nothing directly fastened to a surface of the identified printed sheet. (*See* FAC Ex. A at 8.) Therefore, the accused system does not satisfy the "secured to" limitation in independent claim 1 of the '369 Patent.

In sum, the images attached to the First Amended Complaint indisputably show that the accused JITB system does not satisfy each and every limitation in any of the Asserted Claims. Therefore, Pemberton's infringement allegations fail as a matter of law, and the Court dismisses Pemberton's First Amended Complaint.

### III. Leave to Amend

At the hearing on JITB's Motion, Pemberton requested leave to amend his complaint on the grounds that, even if the Court concludes that the JITB Accused Product does not infringe the Asserted Claims, Pemberton could plausibly allege infringement of other claims contained in the Asserted Patents. The Court therefore **GRANTS** Pemberton leave to file a Second Amended Complaint that addresses the defects set forth above. *Any*

*amended complaint must be consistent with the analysis set forth above in this Order and the analysis set forth in the Court's February 26, 2025 Order (ECF No. 21).  Further, any amended complaint must not contradict the allegations or exhibits contained in the FAC or the original complaint.*  See Reddy, 912 F.2d at 297 (explaining that a plaintiff may "only allege 'other facts consistent with the challenged pleading'").

## CONCLUSION

In light of the foregoing, the Court **GRANTS** JITB's Motion and **DISMISSES** Pemberton's First Amended Complaint **WITH LEAVE TO AMEND**. Pemberton **MAY FILE** a Second Amended Complaint curing the above-identified deficiencies within fourteen (14) days of the electronic docketing of this Order, and JITB **SHALL RESPOND** to Pemberton's operative complaint within twenty-eight (28) days of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated:  August 26, 2025

_____
Honorable Todd W. Robinson
United States District Judge