UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRK PEMBERTON,<br><br>  Plaintiff,<br><br>v.<br><br>JACK IN THE BOX INC.,<br><br>  Defendant. | Case No.: 24-CV-1179 TWR (BJW)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE**<br><br>(ECF No. 34) |

Presently before the Court is the Motion to Dismiss Plaintiff Kirk Pemberton's Second Amended Complaint ("Mot.," ECF No. 34) filed by Defendant Jack in the Box Inc. ("JITB"), as well as Pemberton's Response in Opposition to ("Opp'n," ECF No. 37) and JITB's Reply in Support of ("Reply," ECF No. 38) the Motion and Pemberton's Notice of Supplemental Authority ("Not.," ECF No. 39). The Court held a hearing on December 18, 2025. (*See* ECF No. 40.) Having carefully considered Pemberton's Second Amended Complaint ("SAC," ECF No. 33), those materials properly incorporated by reference, the Parties' arguments, and the relevant law, the Court **GRANTS** JITB's Motion and **DISMISSES WITH PREJUDICE** Pemberton's Second Amended Complaint.

/ / /

/ / /

/ / /

# BACKGROUND[1]

Pemberton is the inventor of a menu board system called the "Re-Facing Magnetic System" ("RMS"). (*See* SAC ¶¶ 6, 8, 10.) The components of the RMS are as follows: "(a) mounting boards; (b) acrylic prints; (c) polycarbonate panels; (d) magnets; (e) price carriers; (f) seam covers; and (g) pre-press-print production." (*Id.* ¶ 11.) Pemberton is the listed owner and inventor of U.S. Patent Nos. 7,870,687 (the "'687 Patent"); 8,205,369 (the "'369 Patent"); and 8,464,447 (the "'447 Patent") (collectively, the "Asserted Patents"). (*Id.* ¶¶ 31, 49, 73; ECF No. 1-2 ("Ex. A").) Plaintiff alleges that JITB's RMS systems infringe claims 1–13 of the '687 Patent, claims 1–16 of the '369 Patent, and claims 1–9 of the '447 Patent (collectively, the "Asserted Claims"). (*Id.* ¶¶ 23, 32–41, 50–65, 74–85.)

The Asserted Patents are related and are all entitled "Signage Apparatus Having Simple Magnet-Based Structure for Ease of Modification," and they share overlapping specifications. U.S. Patent No. 7,870,687, at [54] (filed Jan. 18, 2011); U.S. Patent No. 8,205,369, at [54] (filed Jun. 26, 2012); U.S. Patent No. 8,464,447, at [54] (filed Jun. 18, 2013). The inventions claimed in the Asserted Patents relate "to signs of the type used in fast food restaurants, coffee shops and other retail stores where items offered for sale and their prices frequently change." '687 Patent col. 1 ll. 8–11; *see* '369 Patent col. 1 ll. 15–18; '447 Patent col. 1 ll. 16–17. More specifically, the inventions relate "to a readily modifiable menu board or similar sign which employs a relatively simple magnet-based structure to facilitate easy modifications by non-technical personnel." '687 Patent col. 1 ll. 11–14; *see* '369 Patent col. 1 ll. 18–21; '447 Patent col. 1 ll. 17–21

As examples of the claimed invention, independent claim 1 of the '687 Patent, independent claim 1 of the '369 Patent, and independent claim 1 of the '447 Patent are set forth in full below.

---

[1] For purposes of the Motion, the facts alleged in Pemberton's Second Amended Complaint are accepted as true. *See Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

Independent claim 1 of the '687 Patent recites:

1. A signage apparatus comprising:

a mounting board having at least one aperture;

a metal member attached to a rear surface of said mounting board at said aperture;

a first printed sheet having observable indicia thereon;

at least one magnet affixed to a back surface of said first printed sheet, said magnet being configured to be received in said at least one aperture in magnetic attraction to said metal member for retaining said first printed sheet against said mounting board;

wherein said mounting board is translucent.

'687 Patent col. 4 ll. 56–67.

Independent claim 1 of the '369 Patent recites:

A signage apparatus comprising:

a mounting board having at least one aperture;

a metal member attached to a rear surface of said mounting board at said aperture and a magnet attached to said metal member within said aperture;

a first printed sheet having observable indicia thereon;

at least one connection device secured to a surface of said first printed sheet, said device being configured to be received in said at least one aperture and having a magnetizable metal for magnetic attraction to said magnet for retaining said first printed sheet against said mounting board;

wherein said magnet and said at least one aperture are both circular cylindrical in shape and where said circular cylindrical aperture is at least partially beveled.

'369 Patent col. 6 ll. 23–37.

Independent claim 1 of the '447 Patent recites:

1. A readily modifiable signage apparatus comprising:

a wall having a planar surface for receiving a printed sheet thereon;

a plurality of printed sheets for being releasably affixed to said planar surface, each of said printed sheets and said planar surface having corresponding magnetic attraction devices affixed at selected locations for retaining at least one of said printed sheets on said planar surface in a precisely aligned position

  and for selective removal of one said printed sheet for replacement by another said printed sheet;

  wherein said magnetic attraction devices comprise a respective metal device affixed to a rear surface of each said printed sheet and a magnet affixed to said planar surface of said wall and accessible for magnetic retention of said magnet to said metal device;

  wherein each said respective metal device is affixed to said rear surface of a printed sheet through a respective sponge-like member interposed between said each metal device and a rear surface of a printed sheet.

'447 Patent col. 6 ll. 32–51.

  On July 9, 2024, Pemberton filed the instant action against JITB, asserting three claims of patent infringement as to each of the Asserted Patents. (*See generally* Compl.) On November 13, 2024, Pemberton filed a motion to dismiss Pemberton's complaint, (ECF No. 14), which the Court granted with leave to amend on February 26, 2025, (ECF No. 21).

  Pemberton subsequently filed a First Amended Complaint on March 11, 2025. (*See generally* ECF No. 22 ("FAC").) On March 26, 2025, JITB filed a motion to dismiss Pemberton's claims for patent infringement contained in the First Amended Complaint, (*see generally* ECF No. 23), which the Court granted with leave to amend on August 26, 2025. (*See generally* ECF No. 31 (the "Prior Order").) In the Prior Order, the Court construed the claim term "affixed to" from the '687 Patent and the '447 Patent to require that the magnet/magnetic device be either: (1) directly attached to the printed sheet; or (2) be directly attached to an intermediary component/device that is then directly attached to the printed sheet. (*See id.* at 13–15.) Similarly, the Court construed the claim term "secured to" from the '369 Patent to require that the connection device having magnetizable metal be either: (1) directly attached to the printed sheet; or (2) be directly attached to an intermediary component/device that is then directly attached to the printed sheet. (*Id.* at 15–16.) In light of those two claim constructions, the Court granted JITB's motion to dismiss because a document attached to Pemberton's First Amended Complaint showed that the JITB accused system had nothing directly fastened to the identified printed

sheet, meaning that the attached document indisputably showed that the accused JITB system does not infringe each and every element of the asserted claims in the First Amended Complaint. (*See id.*)

Pemberton subsequently filed his Second Amended Complaint on September 8, 2025. (*See generally* SAC.) In the Second Amended Complaint, Pemberton now alleges that JITB infringes each and every claim contained in the Asserted Patents. (*See id.* ¶¶ 23, 32–41, 50–65, 74–85.) In addition, the Second Amended Complaint adds "claim construction" allegations that Pemberton applies to the infringement allegations contained in the Second Amended Complaint. (*See id.* ¶¶ 20–22.) The instant Motion seeking to dismiss Pemberton's claims for patent infringement contained in the Second Amended Complaint followed on September 23, 2025. (*See generally* ECF No. 34.)

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

///

pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

# ANALYSIS

JITB argues that Pemberton's Second Amended Complaint should be dismissed because Pemberton's operative complaint has again failed adequately to plead claims for patent infringement and also violates the Court's Prior Order. (*See* Mot. at 1–2.) Specifically, JITB contends that the Second Amended Complaint should be dismissed because the screenshots attached to the First Amended Complaint and referenced in the Second Amended Complaint conclusively show that the JITB accused system does not infringe the Asserted Claims under the claim constructions set forth in the Court's Prior Order. (*See* Mot. at 1–2, 10–19.) In response, Pemberton argues that JITB's Motion should be denied because the Court erred in its prior claim constructions and the claim construction issues in this case should be resolved through a *Markman* hearing rather than a Rule 12(b)(6) motion. (*See* Opp'n at 1–2.)

**I.  Claim Construction**

   ***A.  Legal Standard***

Claim construction "is exclusively within the province of the court [to decide]," not the jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996) (en banc); *see Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326 (2015) (holding claim construction is an issue of law for the court to decide). Although claim construction is
/ / /

ultimately a question of law, "subsidiary factfinding is sometimes necessary." *Teva*, 574 U.S. at 326.

"It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citations omitted). "The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting *Markman*, 52 F.3d at 976); *accord Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1369 (Fed. Cir. 2022).

Claim terms "'are generally given their ordinary and customary meaning[,]'" which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312–13. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art [("POSITA")] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent." *O2 Micro*, 521 F.3d at 1360. If the meaning of the term is not readily apparent, the court must look to "'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence.'" *Id.* (quoting *Innova*, 381 F.3d at 1116); *see Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217–18 (Fed. Cir. 2014).

In determining the proper construction of a claim, a court should first look to the language of the claims. *See Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370, 1373 (Fed. Cir. 2019) ("'[C]laim construction must begin with the words of the claims themselves.'"); *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1299 (Fed. Cir. 2014) ("'a

claim construction analysis must begin and remain centered on the claim language itself'"). The context in which a disputed term is used in the asserted claims may provide substantial guidance as to the meaning of the term. *See Phillips*, 415 F.3d at 1314.

A court must also read claims "in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979; *see* 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."). "'Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term.'" *Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1382 (Fed. Cir. 2014) (quoting *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1272 (Fed. Cir. 2011)).

But "[t]he written description part of the specification does not delimit the right to exclude. That is the function and purpose of claims." *Markman*, 52 F.3d at 980. Therefore, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1327 (Fed. Cir. 2012); *accord Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 514 (Fed. Cir. 2015).

In addition to the claim language and the specification, the patent's prosecution history may be considered if it is in evidence. *Phillips*, 415 F.3d at 1317. The prosecution history "consists of the complete record of the proceedings before the [Patent and Trademark Office ("PTO")] and includes the prior art cited during the examination of the patent." *Id.* "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Id.* "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* In addition, a court should also consult the prosecution history "so that the court can exclude any interpretation that was disclaimed
/ / /

during prosecution." *Sorensen v. Int'l Trade Comm'n*, 427 F.3d 1375, 1378 (Fed. Cir. 2005) (citing *Phillips*, 415 F.3d at 1317).

In most situations, analysis of the intrinsic evidence will resolve claim construction disputes. *See Vitronics*, 90 F.3d at 1583; *Teva*, 574 U.S. at 331; *see also Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("If the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence."). However, "[w]here the intrinsic record is ambiguous, and when necessary," district courts may "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting *Phillips*, 415 F.3d at 1317). A court must evaluate all extrinsic evidence in light of the intrinsic evidence. *Phillips*, 415 F.3d at 1319. "'[E]xtrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims.'" *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1373 (Fed. Cir. 2022); *see also Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'"). In cases where subsidiary facts contained in the extrinsic evidence "are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence." *Teva*, 574 U.S. at 332.

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro*, 521 F.3d at 1362; *see also Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016) ("'[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.'"). In certain situations, it is appropriate for a court to determine that a claim term needs no construction and its plain and ordinary meaning applies. *O2 Micro*, 521 F.3d at 1360; *Phillips*, 415 F.3d at 1314. But "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate

when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro*, 521 F.3d at 1361. If the parties dispute the scope of a certain claim term, it is the court's duty to resolve the dispute. *Id.* at 1362; *Eon*, 815 F.3d at 1319.

### B.  *Analysis*

All of the asserted claims of the '687 Patent and the '447 Patent include the requirement that the claimed apparatus include a magnet/magnetic attraction device that is "affixed to" the rear/back surface of the printed sheet. *See* '687 Patent col. 4 ll. 62–63 ("at least one magnet affixed to a back surface of said first printed sheet"), col. 5 ll. 26–28; '447 Patent col. 6 ll. 43–46 ("said magnetic attraction devices comprise a respective metal device affixed to a rear surface of each said printed sheet and a magnet affixed to said planar surface of said wall"), col. 7 ll. 8–10, 25–26. In the Court's Prior Order, the Court construed this claim language to require that the magnet/magnetic device be either: (1) directly attached to the printed sheet; or (2) be directly attached to an intermediary component/device that is then directly attached to the printed sheet. (*See* Prior Order at 13–15.)

Similarly, all of the asserted claims from the '369 Patent include a limitation requiring that the accused apparatus/method include a magnetic connection device that is "secured to" the surface of the printed sheet. *See* '369 Patent col. 6 ll. 29–32 ("at least one connection device secured to a surface of said first printed sheet, said device . . . having a magnetizable metal for magnetic attraction"), 58–61, col. 7 ll. 8–10, 46–48, col. 8 ll. 7–9, 29–30. In the Court's Prior Order, the Court construed this claim language to require that the magnetic connection device be either: (1) directly attached to the printed sheet; or (2) directly attached to an intermediary component/device that is then directly attached to the printed sheet. (*See* Prior Order at 15–16.)

As an initial matter, it should be noted that, in deciding JITB's Rule 12(b)(6) Motion, the Court need not accept as true any of the claim construction allegations contained in the Second Amended Complaint. Those allegations assert that the claim terms "affixed to"

and "secured to" should be given their plain and ordinary meaning and set forth what Pemberton contends is the plain and ordinary meaning of those terms. (*See* SAC ¶¶ 20–22.) As explained above, claim construction is an issue of law for the Court to decide. *See Teva*, 574 U.S. at 326; *Markman*, 517 U.S. at 373. And, in deciding a Rule 12(b)(6) motion to dismiss, a court need not accept as true any legal conclusions set forth in the complaint. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (citing *Iqbal*, 556 U.S. at 678–79). The Court therefore need not accept as true Pemberton's allegations in the Second Amended Complaint regarding the proper meaning of the claim terms "affixed to" and "secured to."

In its Opposition, Pemberton provides several reasons for why the Court erred in rendering its claim constructions for the terms "affixed to" and "secured to" in the Prior Order. All of these arguments fail.

First, Pemberton notes that figure 4 from the '687 Patent's specification depicts an embodiment of the invention where the "magnets are received—not glued—within the apertures." (Opp'n at 7.) Although this is a correct statement by Pemberton, it is of no consequence. The "apertures" Pemberton is referring to are the apertures on the mounting board. The claim constructions at issue relate to how the claimed magnets/magnetic attraction devices are attached to the claimed printed sheet—not how the magnets/magnetic attraction devices are received by the apertures on the mounting board. Further, in describing figure 4, the '687 Patent's specification states:

> Referring first to FIG. 4, it will be seen that each printed sheet **22** is attached to the mounting board at a pair of apertures **26** using a corresponding pair of flat cylindrical magnets **28**. *Each such magnet is adhesively affixed to a sponge-like material **29** which is, in turn, glued to the back of the printed sheet **22** at precisely selected locations.*

'687 Patent col. 4 ll. 7–12 (italics added). As such, figure 4 of the specification and its corresponding description are consistent with the Court's claim construction for the term "affixed to" from the '687 Patent. (*See* Prior Order at 13–14.)

/ / /

Second, Pemberton contends that figure 5 from the '687 Patent's specification depicts an embodiment where the edge members are magnetically coupled to corresponding apertures in the mounting board. (Opp'n at 8–10.) Pemberton argues that the Court's claim construction for the term "affixed to" is improper because it excludes this preferred embodiment. (*Id.* at 12); *see also Kaufman*, 34 F.4th at 1372 ("'A claim construction that excludes a preferred embodiment is rarely, if ever correct and would require highly persuasive evidentiary support.'"). Pemberton is wrong, and the Court's claim construction does not exclude that embodiment. Again, the Court's claim construction for the '687 Patent relates to how magnets/magnetic attraction devices are attached to the printed sheet in the claimed invention. The claim language and the specification make clear that the claimed "edge member" is a different component than the claimed "printed sheets." *See, e.g.*, '687 Patent col. 6 ll. 33–36 ("The signage apparatus recited in claim 5 further comprising <u>at least one elongated edge member magnetically attached</u> to said mounting board <u>in overlapping relation to at least one of said printed sheets</u>." (emphasis added)). As such, the specification's discussion of edge members and how they attach to the mounting board is irrelevant to the Court's construction of the claim terms at issue. (*See* Prior Order at 14–15.)

Third, Pemberton notes that the plain language of claim 1 of the '369 Patent includes "no requirement that the magnet be glued or permanently fixed." (Opp'n at 9–10.) This is true, but the Court's claim constructions do not include that requirement either. The Court's constructions simply require that the magnet/magnetic attraction device be either: (1) directly attached to the printed sheet; or (2) be directly attached to an intermediary component/device that is then directly attached to the printed sheet. As such, the fact that the claim language does not require glue or permanent fixation of the magnet does not demonstrate any error in the Court's constructions.

Fourth, Pemberton notes that the '369 Patent introduces a second preferred embodiment that uses snap-cap connectors where "the magnets remain embedded in the mounting board, while the washer—secured to the sheet through an intermediate snap-

cap—completes the magnetic circuit." (Opp'n at 10–11.) Pemberton again contends that the Court's claim construction excludes this specific embodiment. Again, Pemberton is wrong, and the Court's claim construction for the term "secured to" from the '369 Patent encompasses this specific embodiment.

The specification of the '369 Patent describes this embodiment as follows:

> Reference will now be made to FIGS. **9** to **20** which illustrate an alternative preferred embodiment of the invention for affixing graphics sheets to a mounting board. As shown in FIG. 9, in an embodiment **50**, a mounting board **52** has a plurality of bezel apertures **54** for receiving at least one graphics sheet **56** to form a menu board. As seen best in FIGS. **10** and **11**, in this embodiment a metal shim **70** is secured to the back surface **55** of the board adjacent each aperture **54** and a round metal projection **72** extends into the aperture. A watch battery size magnet **74** is secured to the projection **72** by an adhesive.
>
> At respective corners of the graphics sheet **56** are mounted snap-cap connections **58**. Each has a center protrusion **62** which extends through a small hole **61** in the sheet **56** and mates with a disk **60**. Disk **60** has a sheet side surface **64** and a board side surface **66** as seen in FIG. **12**. Protrusion **62** is lockably received in a mating member **68** (see FIGS. **15** to **17**). As shown in FIGS. **18** to **20**, disk **60** has a metal washer **69** secured therein and when mated with snap-cap connection **58** by trapping protrusion **62**, sandwiches the graphic sheet **56** as best shown in FIG. **20**. This permits washer **69** to be magnetically affixed to magnet **74** as shown in FIG. **11**. Thus, in this second embodiment, each graphics sheet **56** is secured to mounting board **52** by a plurality of magnets, but those magnets remain in the apertures **54** of the board instead of on the back of the sheets as depicted in the first embodiment of FIG. **4**A-**4**C.

'369 Patent col. 5 ll. 28–54 (emphasis in original); *see also id.* figs. 9–20.

In the passages above, the '369 Patent's specification describes an embodiment where the magnetic attraction connection device ("metal **69**" in "disk **60**") is directly attached to the printed sheet ("graphics sheet **56**") via "mounted snap-cap connections **58**." This preferred embodiment is entirely consistent with the Court's construction of the term "secured to" from the '369 Patent because in the embodiment the magnetic attraction connection devices are directly attached to the printed sheet via the snap-cap connectors. / / /

      Fifth, Pemberton notes that the '447 Patent's specification explains that "the magnet may be either on the sign or on the surface and the connecting metal device on the other." (Opp'n at 11.) This is of no consequence because the Court's claim construction for the '447 Patent simply requires that a magnetic attraction device be attached to the printed sheet. That magnetic attraction device can be either the magnet or the connecting metal device. Therefore, the Court's claim construction is not inconsistent with that passage in the specification.

      Sixth, Pemberton cites to the Asserted Patents' prosecution history. (*See* Opp'n at 3–7.) All of the prosecution history cited by Pemberton, however, is irrelevant to the claim construction issues before the Court. Pemberton contends that these portions of the prosecution history demonstrate that in the claimed invention magnetic coupling is used to connect the printed sheet to the mounting board. (*See id.*) Again, this is of no consequence. The claim constructions at issue relate to how the claimed magnets/magnetic attraction devices are attached to the claimed printed sheet—not how the magnets/magnetic attraction devices are received by the apertures on the mounting board. The Court agrees with Pemberton that in the claimed inventions, the printed sheets are attached to the mounting boards via magnetic coupling. But that does not change the fact that the claim language at issue also specifically requires that the magnets/magnetic attraction devices are "affixed to" the printed sheet and that the magnetic attraction connection devices are "secured to" the printed sheets.[2] And a proper construction of those terms based on the intrinsic record requires that the magnets/magnetic attraction devices/ magnetic attraction connection devices are either: (1) directly attached to the printed sheet; or (2) directly attached to an

/ / /

---

[2]    Indeed, the Court agrees with JITB that Pemberton's claim construction positions improperly attempt to read out this specific claim language and render it meaningless. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("[C]laim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."); *see also SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 429 (Fed. Cir. 2016) ("[I]nterpretations that render some portion of the claim language superfluous are disfavored.").

intermediary component/device that is then directly attached to the printed sheet. *See supra*; (*see also* ECF No. 31 at 12–16).

Finally, Pemberton contends that a Rule 12(b)(6) motion to dismiss is the wrong vehicle to decide these claim construction issues and that the issues should be decided at a proper *Markman* hearing instead. (Opp'n at 2.) But the Federal Circuit has sanctioned deciding claim construction issues at the Rule 12(b)(6) stage a case when the claims are "construed based on intrinsic evidence alone," *see UTTO*, 119 F.4th at 992–94, as is the case here. Pemberton does not identify any evidence or arguments relevant to the present claim construction dispute that it can only present to the Court if the Court holds a *Markman* hearing. All of the claim construction arguments contained in Pemberton's briefing are based on the intrinsic record alone. (*See generally* Opp'n at 3–12, 14–17.) As such, Pemberton has failed to provide an adequate explanation for why these claim construction issues cannot be decided at the Rule 12(b)(6) stage.

Pemberton also filed a Notice alerting the Court to the Federal Circuit's recent decision in *Adnexus Inc. v. Meta Platforms, Inc.*, No. 2024-1551, 2025 WL 3492653 (Fed. Cir. Dec. 5, 2025). (*See* Not.) The *Adnexus* case, however, has no impact on the Court's decision to decide these claim construction issues at the 12(b)(6) stage. In *Adnexus*, the Federal Circuit reaffirmed that, "[i]n evaluating a motion to dismiss, district courts may, if they wish, engage in claim construction, provided they give the parties appropriate notice and an opportunity to be heard." 2025 WL 3492653, at *5. In *Adnexus*, the Federal Circuit held that the district court erred because it had "implicitly constru[ed] the disputed claim term against Adnexus, the non-moving party, without first giving Adnexus the opportunity it [had] requested to be heard on the issue of the proper construction of this term." *Id.* The Federal Circuit's holding in *Adnexus* has no impact here because, by granting Pemberton leave to amend and getting a second round of briefing on the claim construction issues in this case, the Court has given Pemberton adequate "notice and opportunity to be heard" on these claim construction issues. *See id.* Indeed, at the hearing, Pemberton conceded that, at this juncture, the Court has a robust record on the claim construction issues presented by

the Parties. As such, there is no reason to delay resolution of these claim construction issues to a later stage in the case.

In sum, Pemberton has failed to provide the Court with any reason to revisit or reconsider it constructions of the claim terms "affixed to" and "secured to." As such, the Court reaffirms that the claim terms "affixed to" and "secured to" require that the magnet/magnetic attraction device/magnetic attraction connection device be either: (1) directly attached to the printed sheet; or (2) directly attached to an intermediary component/device that is then directly attached to the printed sheet.

## II.     Patent Infringement

### A.     Legal Standard

Federal Circuit law applies to the specific question of whether a complaint properly states a claim for patent infringement on which relief may be granted. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024).

Generally, to establish infringement of a patent claim, "a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device." *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1378 (Fed. Cir. 2011); *see SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1380 (Fed. Cir. 2021). A patent infringement analysis proceeds in two steps. *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1350 (Fed. Cir. 2022); *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1329 (Fed. Cir. 2005). In the first step, the court construes the asserted claims as a matter of law. *See Niazi*, 30 F.4th at 1351; *JVW*, 424 F.3d at 1329. In the second step, the factfinder compares the properly construed claims to the accused device. *See id.*

The Federal Circuit has explained that, to assert a plausible claim for patent infringement under the *Iqbal*/*Twombly* standard, the complaint must "place the alleged infringer on notice of what activity is being accused of infringement." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (cleaned up) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). A plausible claim for patent

infringement "must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content." *Id.* Thus, a plaintiff cannot simply recite the claim elements and merely conclude that the accused product has those elements. *Id.* at 1353. Rather, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.*; *see, e.g.*, *Disc Disease Sols. Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (considering the complexity of the technology and the number of claims at issue in assessing whether the plaintiff had adequately stated a claim for patent infringement).

Nevertheless, the Federal Circuit has explained that the standard for pleading patent infringement is "not onerous." *Bot M8*, 4 F.4th at 1354; *see also Bell Semiconductor, LLC v. NXP USA, Inc.*, 653 F. Supp. 3d 767, 777 (S.D. Cal. 2023) ("[V]ery little is required in order to plead a claim of patent infringement."). A patentee need not prove its case at the pleading stage." *AlexSam*, 119 F.4th at 35 (citing *Bot M8*, 4 F.4th at 1346). "More particularly: '[a] plaintiff is not required to plead infringement on an element-by-element basis. Instead, it is enough that a complaint place the alleged infringer on notice of what activity . . . is being accused of infringement.'" *Id.* (quoting *Bot M8*, 4 F.4th at 1352).

Further, in a recent decision, the Federal Circuit held that a district court may consider claim construction issues in deciding a Rule 12(b)(6) motion to dismiss. *See UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 992–94 (Fed. Cir. 2024) (rejecting *per se* rule against construing claim terms at the Rule 12(b)(6) stage of a case); *see also, e.g.*, *Adnexus Inc.*, 2025 WL 3492653, at *5. In *UTTO*, The Federal Circuit explained that, "[w]here claims are construed based on intrinsic evidence alone, a decision on claim construction is not different in kind from the interpretation of other legal standards, which is proper and routine in ruling on a motion under Rule 12(b)(6)." 119 F.4th at 993; *see also id.* at 994 ("Some case-specific circumstances can make it improper for a district court

to resolve a claim construction dispute in the context of adjudicating a Rule 12(b)(6) motion, but sometimes a claim's meaning may be so clear on the only point that is ultimately material to deciding the dismissal motion that no additional process is needed."); *ALD Soc., LLC v. Verkada, Inc.*, 654 F. Supp. 3d 972, 979 (N.D. Cal. 2023) ("[T]he Court may dismiss a complaint prior to claim construction when the complaint rests on an implausible claim construction." (citing *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018))).

### B. Analysis

As previously explained, all of the Asserted Claims include a limitation requiring that the accused apparatus/method include a magnet/magnetic attraction device/magnetic attraction connection device that is "affixed to"/"secured to" the surface of the printed sheet. *See* '447 Patent col. 6 ll. 43–46, col. 7 ll. 8–10, 25–26; '687 Patent col. 4 ll. 63–63, col. 5 ll. 26–28; '369 Patent col. 6 ll. 29–32, 58–61, col. 7 ll. 8–10, 46–48, col. 8 ll. 7–9, 29–30. Under the claim construction analysis in the Court's Prior Order and as set forth above, this claim language requires that the magnet/magnetic device/magnetic connection device be either: (1) directly attached to the printed sheet; or (2) directly attached to an intermediary component/device that is then directly attached to the printed sheet.

At the hearing, Pemberton conceded that he cannot plausibly allege infringement of the Asserted Patents by JITB under the Court's claim constructions set forth above and that further amendment of his complaint would be futile. In light of that concession, the Court concludes that the Second Amended Complaint fails plausibly to allege a claim for patent infringement against JITB. Accordingly, the Court **GRANTS** JITB's Motion **DISMISSES** Pemberton's Second Amended Complaint **WITHOUT LEAVE TO AMEND**. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (explaining that courts should "not grant leave to amend where the amendment . . . is futile").

/ / /

/ / /

# CONCLUSION

In light of the foregoing, the Court **GRANTS** JITB's Motion and **DISMISSES WITH PREJUDICE** Pemberton's Second Amended Complaint.

**IT IS SO ORDERED.**

Dated: January 13, 2026

_____
Honorable Todd W. Robinson
United States District Judge